

CLERK'S OFFICE
A TRUE COPY
Mar 09, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Information associated with Facebook account, user name "Dave Schlosser", and Facebook URL https://www.facebook.com/D.Schlosser65 (Target Account), stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc.

)
)
)
)
)
)
)

Case No. **23-M-316 (SCD)**

Matter No. 2022R00524

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Possession with the intent to distribute, and conspiracy to possess with the intent to distribute controlled substances. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI TFO Kristian P. Perales
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: ___3-9-23___

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Stephen C. Dries, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT
## Matter Number 2022R00524

I, Kristian P. Perales, being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for search warrant for information associated with the following Facebook user "Dave Schlosser" [https://www.facebook.com/D.Schlosser65] (**Target Account**) that is stored at premises owned, maintained, controlled, or operated by Meta Platform Inc., ("Meta") a company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A and B.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta Platform Inc to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am a state certified law enforcement officer employed as a Master Trooper with the Wisconsin State Patrol (WSP) and have been a sworn officer in the State of Wisconsin for over 22 years.  I am also currently a federally deputized task force officer for Federal Bureau of Investigation's (FBI) Milwaukee Area Safe Streets Task Force (MASSTF).  As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.      The MASSTF is an investigative arm of the FBI and is charged under Title 18, United States Code, with the enforcement of laws governing possession of methamphetamine,

distribution of methamphetamine and conspiracy to distribute methamphetamine and narcotics trafficking.

4.      I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

a.      I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.      I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c.      I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d.      I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.      I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.      I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.      I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.      I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.      I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j.      I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

5.      Based on my training, experience, I know conversations of narcotics, drugs, paraphernalia, controlled substances, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through Facebook and Facebook Messenger system, and I am familiar with many of the methods used by individuals who attempt to use Facebook to illegally distribute controlled substances.

6.      The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.      I am currently participating in an investigation of possession of methamphetamine, distribution of methamphetamine and conspiracy to distribute methamphetamine, in violation of Title 21 United States Code Sections 841 and 846, involving David N. SCHLOSSER, Noel R. LOZANO and others identified and not yet identified. I am familiar with the facts and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers; (c) information obtained from numerous witnesses,

including confidential sources; (d) controlled buys; (e) documentary evidence; (f) physical and electronic surveillance; and (g) physical seizures.

8.     This affidavit is submitted in support of an application for a search warrant for SCHLOSSER's Facebook Account, for evidence of SCHLOSSER's and others' involvement in the above-described offenses.   More specifically, I seek authorization to search Facebook's information associated with SCHLOSSER, who is the user associated with the Facebook accounts with the following usernames and ID numbers (Figure 1).

| FACEBOOK NAME | FACEBOOK URL |
| --- | --- |
| Dave Schlosser | https://www.facebook.com/D.Schlosser65 |



(Figure 1)

## II.     PROBABLE CAUSE

9.     The MASSTF and local law enforcement have been investigating Noel R. LOZANO, David N. SCHLOSSER and other identified and unidentified persons involved with a drug trafficking organization (DTO).   Since approximately September 2021 the DTO has been transporting methamphetamines through numerous counties of Wisconsin including, Milwaukee

County; Waukesha County; and Washington County. The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with confidential sources and sources of information; information gathered from other law enforcement officers; documentary evidence; telephone toll data; controlled drug evidence purchases, controlled meetings with targets, recorded telephone calls with targets, and controlled payments of money; and physical surveillance.

10.    As part of the investigation into the DTO, case agents were made aware that SCHLOSSER who is located in West Bend, Wisconsin obtains controlled substances from LOZANO.  SCHLOSSER uses a variety of communication applications to distribute narcotics including Facebook and conventional cellular telephone text messaging and talk.  Several other members of SCHLOSSER's DTO have been identified which include Andrew TRINKL, Tim LILLEY, Sharon WEIMER, and David Jakob KOENIG.

**A.  Criminal History**

11.    On February 23, 2023, case agents queried law enforcement databases regarding SCHLOSSER's criminal history.   The following is a summary and not a complete list. SCHLOSSER has the following criminal arrests:

   a)  December 13, 1989, arrest by Washington County Sheriff for disorderly
       conduct;
   b)  August 20, 1990, arrest by West Bend Police Department for theft;
   c)  April 27, 1992, arrest by Washington County Sheriff for Burglary and
       Possession of Cocaine;
   d)  October 27, 1993, arrest by Washington County Sheriff for disorderly
       conduct;
   e)  March 21, 1994, arrest by Washington County Sheriff for manufacture/deliver
       controlled substance;
   f)  March 25, 1996, arrest by Washington County Sheriff for manufacture/deliver

cocaine <=5g second/subsequent drug offense;

g) May 16, 1999, arrest by Hartford Police Department for disorderly conduct;

h) May 18, 1999, arrest by Washington County Sheriff for disorderly conduct;

i) April 30, 2004, arrest by Fond du Lac County Sheriff for disorderly conduct/domestic abuse;

j) August 22, 2006, arrest by Sheboygan County Sheriff for forgery-uttering and make false/forged prescription order;

k) January 5, 2008, arrest by Sheboygan Police Department for retail theft;

l) November 11, 2010, arrest by Hales Corners Police Department for theft-moveable property;

m) January 4, 2011, arrest by Sheboygan County Sheriff for retail theft-intentionally take;

n) June 24, 2011, arrest by Ozaukee County Sheriff for possession of schedule I and II narcotic drugs;

o) August 2, 2011, arrest by West Bend Police Department for forgery-writings or objects;

p) August 9, 2011, arrest by Sheboygan County Sheriff for disorderly conduct and criminal damage to property;

q) August 21, 2011, arrest by Sheboygan County Sheriff for theft-moveable property;

r) November 14, 2011, arrest by Calumet County Sheriff for retail theft-intentionally take;

s) December 28, 2011, arrest by Franklin Police Department for retail theft-intentionally take;

t) January 11, 2012, arrest by West Bend Police Department for credit card-fraudulent use;

u) February 22, 2015, arrest by West Bend Police Department for retail theft-alter price;

v) July 20, 2015, arrest by Kewaskum Police Department for bail jumping-felony;

w) October 29, 2015, arrest by West Bend Police Department for

misappropriation of person identification to avoid civil/criminal penalty;

x) February 9, 2017, arrest by Washington County Sheriff for theft-moveable property;

y) February 28, 2021, arrest by West Bend Police Department for possession of narcotic drugs and drug paraphernalia.

**B. Controlled Buys**

12.     As part of the investigation into the DTO, case agents have used a Confidential Human Source ("CHS").  CHS has contacted or was contacted by SCHLOSSER to conduct the purchase of methamphetamine using SCHLOSSER's telephone number 262-573-5480 and 262-208-6211 and SCHLOSSER's Facebook, D.Schlosser65 (**Target Account**), using Facebook Messenger.  CHS received a price for the requested amount of methamphetamine and a meeting location for the delivery of methamphetamine from SCHLOSSER during these contacts. CHS was able to identify SCHLOSSER as the person CHS contacted based on prior interactions with SCHLOSSER.

13.     During the below listed controlled buys of controlled substances the CHS placed a recorded phone call to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement.  Additionally, the controlled substances were all weighed and tested positive for the listed substance and the target was identified by the CHS through photographs.  Further, prior to all controlled buys with SCHLOSSER, case agents were conducting surveillance of 1533 Barton Avenue, West Bend, Wisconsin 53090, which was identified as an address associated with SCHLOSSER.

**a. First Controlled Drug Buy – January 17, 2023**

14.     On December 21, 2022, CHS set up a controlled buy of methamphetamine from SCHLOSSER using telephone 262-573-5470. SCHLOSSER and CHS agreed to meet in the area of 1500 Barton Avenue, West Bend, Wisconsin.  CHS drove to the location and met with SCHLOSSER.  After the transaction, CHS met with case agents and turned over the suspected methamphetamine.    The  methamphetamine  was  tested  with  NARTEC  METH-1 Methamphetamine/MDMA  test  kit  and  also  with  NARTEC  Amphetamine/Opiates  Marquis Reagent test kit.  Both test results were positive.  The weight of the methamphetamine was 1.0 grams.

### b.  Second Controlled Drug Buy – January 4, 2023

15.     On January 4, 2023, CHS set up a controlled buy of methamphetamine from SCHLOSSER  using  telephones  262-573-5470  and  262-208-6211.    CHS  went  to  the  pre-determined area of 1500 Barton Avenue, West Bend, Wisconsin.  While CHS was on the way there, SCHLOSSER informed CHS that he was not able meet the CHS, but that another individual would be there to provide CHS with methamphetamine.    Once at the location another male identified as Andrew J. TRINKL provided CHS methamphetamine in exchange for money on behalf of SCHLOSSER.  Case agents were able to identify TRINKL based on past law enforcement contact and review of a prior booking photo.  After the transaction, CHS met with case agents and turned over the methamphetamine.  The methamphetamine was tested with NARTEC METH-1 Methamphetamine/MDMA test kit and NARTEC Amphetamine/Opiates Marquis Reagent test kit.  Both test results were positive.  The methamphetamine weighted 1.0 grams.

### c.  Third controlled buy-January 11, 2023

16. On January 11, 2023, CHS set up a controlled buy of methamphetamine from SCHLOSSER using telephone 262-573-5470. SCHLOSSER and CHS agreed to meet in the area of 1500 Barton Avenue, West Bend, Wisconsin. CHS drove to the location and met with SCHLOSSER. SCHLOSSER provided CHS with methamphetamine and CHS provided money to SCHLOSSER. After the transaction, CHS met with case agents and turned over the suspected methamphetamine. The methamphetamine was tested with NARTEC METH-1 Methamphetamine/MDMA test kit and also with NARTEC Amphetamine/Opiates Marquis Reagent test kit. Both test results were positive. The weight of the methamphetamine was 3.4 grams.

### d. Fourth controlled buy-February 3, 2023

17. On February 3, 2023, CHS set up a controlled buy of methamphetamine from SCHLOSSER using telephone 262-208-6211. SCHLOSSER advised CHS that SCHLOSSER would be using "DJ" to conduct the transaction. SCHLOSSER advised CHS to go to the area of the 200 block of West Roosevelt Drive, West Bend, Wisconsin. SCHLOSSER told CHS that the methamphetamine would be in "DJ's" black Chevrolet Equinox. SCHLOSSER direct CHS to go into the vehicle, get the methamphetamine and leave the money in the vehicle. Based on the investigation into the DTO, case agents previously identified "DJ" as David Jakob KOENIG. Case agents are aware that KOENIG drives a black Chevrolet Equinox with Wisconsin license plate 204-WUV. CHS did as SCHLOSSER directed and located suspected methamphetamine inside DJ's" black Chevrolet Equinox. No one was inside the vehicle at the time. CHS then left the money in exchange for the methamphetamine inside the black Chevrolet Equinox. After the transaction, CHS met with case agents and turned over the suspected methamphetamine. The methamphetamine was tested with NARTEC METH-1 Methamphetamine/MDMA test kit and

also with NARTEC Amphetamine/Opiates Marquis Reagent test kit. Both test results were positive. The weight of the methamphetamine was 3.23 grams. The methamphetamine was packaged and placed into evidence.

  **e.**  **Fifth controlled buy-February 15, 2023**

  18**.**  On February 15, 2023, CHS set up a controlled buy of methamphetamine from SCHLOSSER using telephone 262-208-6211. CHS also communicated with SCHLOSSER on Facebook Messenger for this transaction using SCHLOSSER's Facebook, D.Schlosser65 (**Target Account)**. SCHLOSSER and CHS agreed to meet in the area of 1500 Barton Avenue, West Bend, Wisconsin. CHS drove to the location and met with SCHLOSSER. SCHLOSSER provide CHS with suspected methamphetamine and CHS provided SCHLOSSER with money. After the transaction, CHS met with case agents and turned over the suspected methamphetamine. The methamphetamine was tested with NARTEC METH-1 Methamphetamine/MDMA test kit and also with NARTEC Amphetamine/Opiates Marquis Reagent test kit. Both test results were positive. The weight of the methamphetamine was 2.91 grams.

  **C. Additional Communication With DTO**

  19.  Around February 13, 2023, CHS advised that he/she had a conversation with SCHLOSSER on text message using telephone 262-208-6211. The conversation was to arrange for CHS to distribute controlled substances for SCHLOSSER. In the conversation SCHLOSSER asked CHS if they trusted "Sharon." CHS later identified "Sharon" as Sharon Weimer to case agents. SCHLOSSER also advised CHS to tell "Sharon" that the price is 200 for an eight ball. Based on my training and experience I know an "eight ball" refers to 3-3.5 grams of a controlled substance. SCHLOSSER advised CHS that CHS would keep $25 from "Sharon." CHS stated that CHE trusts "Sharon." CHS asked SCHLOSSER if he wants CHS to deliver to "Sharon."

SCHLOSSER said yes.  SCHLOSSER told CHS that he wants people to think it ss a wrap.  CHS stated that means that SCHLOSSER wants people to think that he is not selling methamphetamine anymore.

20.     Around February 15, 2023, CHS stated that he/she had contact with SCHLOSSER over Facebook Messenger. SCHLOSSER was using his Facebook account, D.Schlosser65 (**Target Account**).  CHS showed investigators the Facebook Messenger conversation.  The conversation between CHS and SCHLOSSER was about making a methamphetamine purchase.  SCHLOSSER told CHS that he was waiting on the bus.  Based on training, experience, and the investigation into this DTO and statements by CHS, case agents understood this to mean that SCHLOSSER was waiting to be supplied methamphetamine.  CHS advised SCHLOSSER to let CHS know when SCHLOSSER had received the methamphetamine.  CHS later messaged to SCHLOSSER if he had any update.  SCHLOSSER replied that it would be 45 minutes.  CHS also asked about the price and SCHLOSSER told CHS that the price was $160.00 cash or $175.00 with credit card.  Case agents are aware based on the investigation into the DTO, SCHLOSSER will accept drug payments using money applications like CashApp or Venmo.

21.     CHS's information is credible and reliable.  CHS has provided information to certified Wisconsin law enforcement in the past, pertaining to individuals involved in illegal activities, which have been independently verified.  The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance.  CHS has a past criminal history including arrest for drugs, theft, child neglect and operating a vehicle while impaired offenses.  CHS has cooperated with law enforcement in exchange for consideration on a state felony drug charge and CHS is also receiving monetary compensation for services rendered.

22.     Case agents believe the Facebook account associated with user "Dave Schlosser", https://www.facebook.com/D.Schlosser65 (**Target Account)** continues to contain valuable information that could be used as evidence for the possible crimes of distribution and possession with intent to distribute controlled substances and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846.

### III.     FACEBOOK INFORMATION

23.     Case agents believe the Facebook content sought and outlined in Attachment B are evidence relating to this investigation are available to Meta.

24.     Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com.   Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

25.     Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.   Each Facebook user is assigned a user identification number and can choose a username.

26.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can

exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

27. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

28. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

29. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video and can be tagged

by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

30.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and retains transactional records related to voice and video chats of the date of each call. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

31.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

32.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

33.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

34.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

35.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

36. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

37. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

38. Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

39. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

40. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a

Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

     41.    Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## IV. INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

42.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## V. JURISDICTION

43.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## VI. CONCLUSION

44.     Based on the foregoing, I request that the Court issue the proposed search warrant.

45.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2022R00524**

This warrant applies to information associated with Facebook account associated with user name "Dave Schlosser" and Facebook URL https://www.facebook.com/D.Schlosser65 (**Target Account)** that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2022R00524**

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)      All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities from September 1, 2021, to present;

(c)      All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos from September 1, 2021, to present;

(d)      All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests from September 1, 2021, to present;

(f) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from September 1, 2021, to present;

(m) All audio messages sent by the account and messages received by the account from September 1, 2021, to present;

(n) All video messages sent by the account and to the account from September 1, 2021, to present;

(o) Any and all location data that is recorded by Facebook related to the account from September 1, 2021, to present;

(p)    All information about the user's access and use of Facebook Marketplace;

(q)    The types of service utilized by the user;

(r)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(s)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(t)    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

(u)    Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts.

Meta is hereby ordered to disclose the above information to the government within twenty-eight (28) days of service of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of in violation of Title 21 United States Code Sections 841(a)(1) and 846 since September 1, 2021, to present, involving Noel R. LOZANO, David N. SCHLOSSER, and other identified and unidentified co-conspirators, including, for the user ID identified on Attachment A, information pertaining to the following matters:

(a) The sale of illegal drugs, any preparatory steps taken in furtherance of the criminal scheme, and communications between David SCHLOSSER, and others related to the relevant offense conduct of the sale of illegal drugs.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation; and

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).